1
2
3
4                          UNITED STATES DISTRICT COURT
5                      FOR THE NORTHERN DISTRICT OF CALIFORNIA
6                                  OAKLAND DIVISION
7

8   SANDRA HATFIELD, an individual;              Case No:  C 13-5206 SBA
    LAUREL ANTONUCCI, an individual; and
9   MAUREEN PATRICIA MURPHY, an                  **ORDER GRANTING
    individual,                                  DEFENDANT'S MOTION TO
10                   Plaintiffs,                  DISMISS**

11           vs.                                  Dkt. 7

12  DaVITA HEALTHCARE PARTNERS, INC.;
    and Does 1 through 50, inclusive,,
13
                    Defendants.
14

15

16          Plaintiffs Sandra Hatfield ("Hatfield"), Laurel Antonucci ("Antonucci") and

17  Maureen Patricia Murphy ("Murphy") filed suit in state court alleging that they were

18  subjected to discrimination and retaliation, and ultimately were constructively discharged

19  by their former employer, DaVita Healthcare Partners, Inc. ("DaVita" or "Defendant").

20  Defendant removed the action to this Court on the basis of diversity jurisdiction, 28 U.S.C.

21  § 1332.

22          The parties are presently before the Court on Defendant's Motion to Dismiss

23  Pursuant to FRCP 12(b)(6), or Alternatively, 12(e).  Dkt. 7.  Having read and considered

24  the papers filed in connection with this matter and being fully informed, the Court hereby

25  GRANTS the motion to dismiss and DENIES AS MOOT the alternative motion for a more

26  definite statement.  Plaintiffs' second through sixth causes of action are DISMISSED with

27  leave to amend.  The Court, in its discretion, finds this matter suitable for resolution

28  without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.      __BACKGROUND__[1]

Defendant operates kidney dialysis clinics throughout the United States, including one located in the Bel-Aire Plaza Shopping Center in Napa, California, where each of the Plaintiffs worked.  Compl. ¶ 4, Dkt. 1.  Hatfield moved from Indiana to California to work as a dialysis nurse at the clinic in July 2012.  Id. ¶ 5, 10, 46.  Murphy began working at the clinic in January 2012, also as a dialysis nurse.  Id. ¶¶ 7, 12.  Antonucci worked at the clinic as a social worker beginning in December 2005.  Id. ¶ 11.

Plaintiffs allege a myriad of complaints with respect to working at the Napa clinic. They claim to have experienced a hostile work environment which was "medically dangerous," and "rife with discrimination" as a result of the predominantly Filipino clinic staff who were abusive Caucasian patients and staff.  Id. ¶ 13.  In addition, Plaintiffs allege that: Defendant failed to accommodate Murphy's disability, id. ¶ 13D; discriminated against Antonucci on account of her sexual preference, id. ¶ 13E; and terminated Murphy for complaining about the work environment, id. ¶ 13F.  The work conditions allegedly became sufficiently unbearable such that Hatfield was constructively discharged in April 2013; Antonucci in March 2013; and Murphy in October 2012.  Id. ¶ 15.

On October 4, 2013, Plaintiffs filed the instant action against Defendant in the County of Napa Superior Court alleging six state law causes of action for:  (1) constructive discharge in violation of public policy (by Hatfield and Antonucci only); (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) retaliation, failure to prevent harassment, discrimination; (5) fraudulent inducement to accept employment (by Hatfield only); and (6) intentional infliction of emotional distress.

On November 8, 2013, Defendant removed the action on the basis of diversity jurisdiction.  Pursuant to Rule 12(b)(6), Defendant moves to dismiss the second through sixth causes of action for failure to state a claim, or alternatively, for a more definite statement under Rule 12(e).  The motion has been fully briefed and is ripe for adjudication.

---

[1] The following summary is taken from allegations of the Complaint which are presumed true for purposes of a Rule 12(b)(6) motion to dismiss.

## II.    LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'"  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570 (2007)).  A complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile.  Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

## III.   DISCUSSION

### A.    BREACH OF CONTRACT

In general, employment relationships in California are presumed to be "at will," meaning that "employment may be ended by either party 'at any time without cause,' for any or no reason, . . ."  Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 335 (2000) (summarizing

Cal. Lab. Code § 2922).  The statutory presumption of at-will employment may be overcome by "'an agreement, express or implied, that . . . the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some "cause" for termination.'"  Foley v. Interactive Data Corp., 47 Cal.3d 654, 680 (1988) (citation omitted).  "The mere existence of an employment relationship affords no expectation, protectible by law, that employment will continue, or will end only on certain conditions, unless the parties have actually adopted such terms."  Guz, 24 Cal. 4th at 350.

In their second cause of action for breach of contract, Plaintiffs allege that their employment was governed by "written contracts" which provided that they could be discharged only for good cause.  Compl. ¶ 25.  To state a claim for breach of contract, a plaintiff must allege facts establishing the existence of a contract, her performance or excuse for nonperformance, breach by the other party, and resulting damages.  See First Comm'l Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).  Here, Defendant focuses on the first element, and contends that Plaintiffs' allegations are insufficient to demonstrate the existence of express employment agreements.

With regard to Hatfield, Plaintiffs allege that her written contract is comprised of the job offer letter from Defendant, a copy of which is attached as Exhibit A to the Complaint.  Compl. Ex. A.  The letter expressly states, however, that Hatfield's employment is "at-will" and can be terminated "at any time, for any reason or no reason, with or without notice."  Id.  The letter further confirms that nothing contained therein is "intended to create an express or implied contract."  Id.  Given the provisions affirming that Hatfield's employment is at-will, her offer letter is insufficient to establish the existence of an express contract of employment.  See Soliman v. CVS RX Servs., Inc., --- Fed.Appx. ---, 2014 WL 1568863, *1 (9th Cir. April 21, 2014) (affirming dismissal of breach of contract claim, where the employee's offer letter stated that the offer was for "at will employment such that you or the Company may terminate your employment relationship at anytime and for any reason.").

Antonucci's breach of contract claim fares no better.  The pleadings allege that Antonucci's written contract is embodied in her written job description, a copy of which is attached to the Complaint as Exhibit B.  Compl. Ex. B.  However, this document is nothing more than a general description of the job duties for the social worker position.  This is confirmed at the bottom of the job description, which recites that:  "The above statements are intended to describe the general nature and level of work assignment for this job."  Id. There are no statements in the job description that create any express or implied contractual obligations on the part of Defendant or suggest that Antonucci's employment with Defendant was anything other than at-will.

Finally, Plaintiffs have failed to establish the existence of an express contract of employment between Defendant and Murphy.  Defendant contends that Plaintiffs have failed to state a cause of action for breach of contract as to Murphy on the grounds that Plaintiffs have not alleged verbatim the contract terms allegedly breached or attached a copy of the contract to the pleadings.  Opp'n at 6.[2]  While this rule applies in state court actions, see Otworth v. Southern Pac. Transportation Company, 166 Cal. App. 3d 452, 459 (1985), it is not entirely clear that it is germane to federal court actions, which are governed by Rule 8(a), see Daly v. United Healthcare Insurance Company, No. C 10-3032 LHK, 2010 WL 4510911, *3 (N.D. Cal. Nov. 1, 2010) ("Federal procedural law . . . does not require plaintiffs to attach a copy of the contract to a complaint alleging breach of that contract or to recite the contract terms verbatim").  That notwithstanding, the pleadings fail to allege any facts regarding the nature and terms of the express contract between Murphy and Defendant that allegedly was breached.

It bears noting that Plaintiffs fail to respond directly to Defendant's arguments for dismissing any of their claims for breach of contract.  Instead, Plaintiffs counter that "California courts have allowed contract claims to stand despite the at-will nature of a plaintiff's employment agreement where the plaintiff alleged a claim for wrongful

---

[2] Unlike Hatfield and Antonucci, Murphy "does not have her written contract in her possession."  Compl. ¶ 25.

discharge in violation of public policy." Opp'n at 5.  This assertion is illogical and legally

untenable.  In <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal.3d 167 (1980), "the California

Supreme Court carved out an exception to the at-will rule by recognizing a *tort* cause of

action for wrongful terminations that violate public policy."  <u>Freund v. Nycomed

Amersham</u>, 347 F.3d 752, 758 (9th Cir. 2003) (emphasis added).[3]  The duty underlying a

<u>Tameny</u> claim "is not based on the terms and conditions of the contract, but rather arises

out of a duty implied in law on the part of the employer to conduct its affairs in compliance

with public policy[.]" <u>Koehrer v. Super. Ct.</u>, 181 Cal. App. 3d 1155, 1166 (1986).  As such,

Plaintiffs' ability to bring a claim for wrongful termination in violation of public policy has

no bearing on whether they have satisfied the pleading requirements to state a claim for

breach of contract.

　　　　Given Plaintiffs' failure to address the deficiencies in their breach of contract cause

of action, it is unclear whether their lack of response indicates their desire to abandon their

contract claim.  See <u>Ramirez v. Ghilotti Bros. Inc.</u>, 941 F. Supp. 2d 1197, 1210 (N.D. Cal.

2013) (finding that the failure to respond to argument amounts to a concession that the

argument has merit).  In view of this ambiguity, the Court, out of an abundance of caution,

grants Plaintiffs leave to amend to allege facts sufficient to establish the existence of an

express contract if they are able.  Plaintiffs should be aware that any pleading filed in this

Court is subject to Federal Rule of Civil Procedure 11, and therefore, Plaintiffs may allege

additional facts only to the extent that they have a good faith basis for doing so.  If

Plaintiffs no longer desire to pursue their breach of contract claim, they should omit such

claim from the amended complaint.  See <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814

---

[3] The elements of a claim for wrongful termination in violation of public policy are:
(1) an employer-employee relationship; (2) an adverse employment action, (3) that the
adverse employment action violated public policy, and (4) the adverse employment
action caused the employee damages.  <u>Haney v. Aramark Uniform Servs., Inc.</u>, 121 Cal. App. 4th
623, 641 (2004).  Here, Plaintiffs' first cause of action is for wrongful constructive
discharge in violation of public policy on behalf of Hatfield and Antonucci.  That claim is
not being challenged by Defendant in the instant motion to dismiss.

1  (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint

2  which are not alleged in the amended complaint.").  Accordingly, Plaintiffs' second cause

3  of action for breach of contract is DISMISSED with leave to amend.

4  **B.    BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

5  Every contract imposes upon each party a duty of good faith and fair dealing in its

6  performance and its enforcement.  Carma Developers (Cal.), Inc. v. Marathon Devel. Calif.,

7  Inc., 2 Cal.4th 342, 371-72 (1992).  The existence of a contract is a necessary element of a

8  claim for breach of the implied covenant of good faith and fair dealing.  See Racine &

9  Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1031 (1992) ("The

10 implied covenant of good faith and fair dealing rests upon the existence of some specific

11 contractual obligation.").  In view of the Court's finding that Plaintiffs have failed to state a

12 claim for breach of contract, Plaintiffs' third cause of action for breach of the implied

13 covenant of good faith and fair dealing is DISMISSED with leave to amend.

14 **C.    DISCRIMINATION/FAILURE TO PREVENT HARASSMENT/RETALIATION**

15 Plaintiffs' fourth cause of action is styled as "Retaliation; Failure to Prevent

16 Harassment; Discrimination."  In fact, these are distinct legal claims, which, for purposes of

17 clarity, should have been alleged as separate causes of action.  Janken v. GM Hughes

18 Elecs., 46 Cal.App.4th 55, 64-65 (1996) (noting that a harassment claim is distinct from a

19 discrimination or retaliation claim).  Defendant's arguments for dismissal of these claims

20 are discussed below.

21 **1.    Discrimination**

22 *a)    Race, Sexual Orientation and Medical Condition*

23 Under California's Fair Employment and Housing Act ("FEHA"), it is "an unlawful

24 employment practice . . . [f]or an employer, **because of** the race, religious creed, color,

25 national origin, ancestry, physical disability, mental disability, medical condition, genetic

26 information, marital status, sex, gender, gender identity, gender expression, age, sexual

27 orientation, or military and veteran status of any person . . . to discriminate against the

28 person in compensation or in terms, conditions, or privileges of employment."  Cal. Gov't

1   Code § 12940(a) (emphasis added).[4]  The Complaint alleges that:  (1) all Plaintiffs were

2   subjected to discrimination on account of their race and for opposing Defendant's

3   "unlawful and discriminatory employment practices," Compl. ¶¶ 13B, 36; (2) Murphy was

4   subjected to discrimination on account of her whistleblowing and an unspecified "medical

5   condition," id. ¶¶ 13D, 13F, 38; and (3) Antonucci was allegedly subjected to

6   discrimination on account of her unspecified "sexual preference," id. ¶¶ 37.[5]

7        With regard to Plaintiffs' FEHA claims of race, sexual orientation and medical

8   condition discrimination, Defendant contends that Plaintiffs have failed to allege facts

9   establishing a prima facie case of discrimination under McDonnell Douglas Corp v. Green,

10  411 U.S. 792 (1973).  See Guz, 24 Cal.4th at 354-55 (noting that California has adopted the

11  McDonnell Douglas framework in employment discrimination cases).  Though Plaintiffs

12  fail to address this contention, the Court notes that "[t]he prima facie case under McDonnell

13  Douglas . . . is an evidentiary standard, not a pleading requirement."  Swierkiewicz v.

14  Sorema N.A., 534 U.S. 506, 509 (2002).  "Consequently, the ordinary rules for assessing

15  the sufficiency of a complaint apply."  Id.  Under those "ordinary rules," plaintiff must

16  properly allege factual allegations which "allow[ ] the court to draw the reasonable

17  inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

18       Applying the federal standards for pleading in accordance with Rule 8(a), the Court

19  finds that the allegations of the Complaint are too conclusory to state a claim for

20  discrimination under FEHA.  Though generally alleging that the predominantly Filipino

21  staff at Defendant's clinic in Napa discriminated against Caucasians, Plaintiffs do not

22

23  [4] The Complaint does not specify whether Plaintiffs' discrimination claim is brought
    under FEHA or its federal analog, Title VII of the Civil Rights Act of 1964 ("Title VII"), or
24  both.  Since Plaintiffs filed suit in state court, they presumably are relying solely on state
    law.  However, "Title VII and FEHA operate under the same guiding principles." Brooks v.
25  City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).  Therefore, the Court's analysis is
    the same, regardless of whether Plaintiffs' discrimination claim is construed under FEHA
26  or Title VII.

27  [5] Plaintiffs' allegations of discrimination based on opposing Defendant's allegedly
    illegal practices and being a whistleblower are more accurately framed as retaliation claims,
28  and will be discussed in the subsection below.

specifically identify themselves as Caucasian—or any other race.  Compl. ¶ 13B.  Plaintiffs also do not allege that the actions of Filipino employees occurred in their presence or were directed at them because of their race.  Similarly, no facts are alleged establishing Antonucci's sexual orientation or Murphy's medical condition.  The Complaint also does not set forth any facts regarding the actions of Defendant were because of their sexual orientation and/or medical condition.  Id. ¶¶ 13D, 13E.  In view of the paucity of facts alleged in the Complaint, Plaintiffs' race, sexual orientation and medical condition discrimination claims are DISMISSED with leave to amend.

### b)      *Failure to Accommodate*

Plaintiffs allege that "[Defendant] failed to provide [Murphy] with reasonable accommodations despite being able to do so."  Compl. ¶ 13D.  A claim for failure to accommodate is governed by California Government Code § 12940(m).  The essential elements of such a claim are:  (1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is a qualified individual; and (3) the employer failed to reasonably accommodate the plaintiff's disability.  Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 255-56 (2000).  A claim under § 12940(m) is similar to one for discrimination under § 12940(a) in that the plaintiff must suffer from a disability covered by FEHA and is a qualified individual, but differs in that an adverse employment action need not be shown.  Id.  Here, Plaintiffs fail to allege any facts specifying Murphy's alleged disability, that she is a qualified individual or how Defendant failed to accommodate her disability.  Accordingly, said claim is DISMISSED with leave to amend.

### 2.      **Failure to Prevent Harassment**

FEHA makes it unlawful for "an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov. Code § 12940(k).  A plaintiff seeking to recover damages based on a claim of failure to prevent harassment or discrimination must show three essential elements: (1) she was subjected to discrimination, harassment or retaliation; (2) the defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and (3) defendant's failure caused

1   plaintiff to suffer injury, damage, loss or harm.  Leland v. City and County of San

2   Francisco, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008) (citing BAJI 12.11).  Plaintiffs

3   allege, without elaboration, that Defendant "failed to take reasonable steps to prevent the

4   aforementioned harassment, discrimination and retaliation."  Compl. ¶ 38.[6]

5         As noted, the first element of a cause of action under § 12940(k) requires the pleader

6   to establish that he or she was subjected to harassment.  To establish a prima facie claim of

7   harassment under FEHA, a plaintiff must allege five elements:  "(1) plaintiff belongs to a

8   protected group; (2) plaintiff was subject to unwelcome [ ] harassment; (3) the harassment

9   complained of was based on [a protected classification]; (4) the harassment complained of

10  was sufficiently pervasive so as to alter the conditions of employment and create an abusive

11  working environment; and (5) respondeat superior."  Fisher v. San Pedro Peninsula Hosp.,

12  214 Cal. App. 3d 590, 608 (1989); see Cal. Gov't Code § 12940(j)(1) (proscribing

13  harassment on account of an employee or applicant's protected classification).

14        It is not entirely clear from the pleadings what type of harassment is being alleged.

15  For instance, the Complaint appears to allege harassment on account of race, as exemplified

16  by Plaintiffs' claims that Filipino employees "would regularly berate" Caucasian

17  employees.  Compl. ¶ 13B.  However, Plaintiffs do not identify themselves as Caucasian

18  nor do they allege that they were subjected to or witnessed the various alleged acts of race-

19  based harassment.  Id.  Similarly, Plaintiffs claim that Antonucci was allegedly "treated

20  abusively and unfairly" and was "excluded from meetings [] and was the object of scorn

21  and derision" because of her sexual orientation.  Id. ¶ 13E.  Again, however, Plaintiffs fail

22  to identity Antonucci's sexual orientation.  Moreover, the allegations regarding Antonucci's

23  alleged mistreatment are conclusory, and otherwise fail to establish that the alleged

24

25

26        [6] As discussed, to state a claim for failure to prevent discrimination, harassment are
    retaliation, Plaintiffs must allege facts sufficient to state a claim for discrimination,
27  harassment and retaliation.  Plaintiffs' claim for discrimination is discussed above, and their
    claim for retaliation is discussed below.  Therefore, this section specifically focusses on
28  Plaintiffs' claim for harassment.

harassment was "sufficiently pervasive so as to alter the conditions of employment."  See Fisher, 214 Cal. App. 3d at 608.

The vague and conclusory allegations of harassment fail to afford fair notice to Defendant of the nature and factual basis for this claim.  Plaintiffs' claims for failure to prevent harassment as well as the failure to prevent discrimination and retaliation are therefore DISMISSED with leave to amend.

### 3.   Retaliation

The anti-retaliation provision of FEHA prohibits employers from taking any adverse employment action against an employee who "has opposed any practices forbidden under [§ 12940] or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov't Code § 12940(h).  "To state a claim of retaliation under FEHA, a plaintiff must show:  (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action."  Rope v. Auto-Chlor Sys. of Wash., Inc., 220 Cal. App. 4th 635, 651 (2013).  A similar yet distinct claim for retaliation *in violation of public policy* may be alleged where the alleged employer misconduct involves an adverse employment action that is *less severe than discharge*.  Garcia v. Rockwell Internat. Corp., 187 Cal. App. 3d 1556, 1562 (1986), abrogated on other grounds, Gantt v. Sentry Insurance, 1 Cal.4th 1083 (1992).[7]  Such a claim is analyzed under the same test applicable to a FEHA retaliation claim.  See Loggins v. Kaiser Permanente Int'l, 151 Cal. App. 4th 1102, 1109 (2007).

In the instant case, Plaintiffs allege that they were "subjected to harassing conduct . . . because they opposed Defendant DaVita's unlawful and discriminatory employment practices and communicated such opposition to it."  Compl. ¶ 36.  The specific, objectionable practices allegedly communicated to Defendant are not clearly

---

[7] Where the adverse employment action is a termination, the claim is one for wrongful termination in violation of public policy, as opposed to retaliation.  See Scott v. Phoenix Schools, Inc., 175 Cal. App. 4th 702, 714 (2009).

specified in the paragraphs that comprise this cause of action.  Nonetheless, the Court notes that elsewhere in the Complaint there are allegations that Plaintiffs were subjected to a "medically dangerous environment," "intolerable conditions" and racially-abusive conduct by Filipino employees.  E.g., id. ¶ 13A, 13B, 13C.  What is absent, however, are allegations that Plaintiffs actually complained about these practices to Defendant or precisely how Defendant allegedly harassed or retaliated against Plaintiffs for making such complaints (assuming they were made).  In this regard, the allegations of the Complaint are particularly confusing, as Plaintiffs allege only that "*Murphy was terminated* because of complaints she made to Defendant DaVita regarding *some* of the conditions described above."  Compl. ¶ 13F (emphasis added).

In sum, the allegations in support of Plaintiff's retaliation claim fail to provide Defendant with fair notice of the factual basis therefor.  To the extent that Plaintiffs intend to pursue a claim of retaliation, it is incumbent upon them to allege facts that specify the nature of the complaint or complaints made to Defendant by each Plaintiff, the adverse employment action resulting from making such complaint, and facts from which it may be plausibly inferred that the adverse employment action is linked to those complaints.  Given the absence of such allegations in the Complaint, Plaintiffs' cause of action for retaliation is DISMISSED with leave to amend.

### D.    FRAUDULENT INDUCEMENT TO ACCEPT EMPLOYMENT

California Labor Code § 970 prohibits the making of knowingly false statements to induce or persuade someone to change their residence for purposes of employment.  The statute provides, in pertinent part:

> No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change ... from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:
>
> (a) The kind, character, or existence of such work;
>
> (b) The length of time such work will last, or the compensation therefor[.]

Cal. Lab. Code § 970.  This provision "has a public purpose: to protect the community from the harm inflicted when a fraudulently induced employment ceases and the former employee is left in the community without roots or resources and becomes a charge on the community." Mercuro v. Super. Ct., 96 Cal. App. 4th 167, 180 (2002).  Because this claim sounds in fraud, it must be alleged with particularity under Rule 9(b). Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  To comport with Rule 9(b), the plaintiff must allege "the who, what, when, where, and how" of the alleged fraudulent conduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

The Complaint alleges that Defendant fraudulently induced Hatfield to move from Indiana to California based on false promises that:  (1) Defendant's Napa clinic was compliant with California law; (2) the clinic was "a good place to work"; (3) the clinic "had a reputation as a facility with a statue [sic] and respect in the public's eye"; (4) Hatfield would find her job "fulfilling and satisfying"; and (5) "the clinic conditions were professional." Compl. ¶ 43, 46.  Absent from the Complaint are allegations regarding when and who made each of these statements, or facts supporting the inference that Defendant knew the statements were false when made. See Hsu v. OZ Optics, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (dismissing claim for promissory fraud where plaintiff failed to allege facts showing that the defendant had no intention of being bound by its contractual promises).

Plaintiffs argue that Rule 9(b)'s particularity requirements should be relaxed because "the facts lie more in the knowledge of the Defendant." Opp'n at 7.[8]  "Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession." U.S. ex rel. Lee v. SmithKline Beecham, Inc. 245 F.3d 1048, 1052 (9th Cir. 2001).  In such situations, plaintiffs [cannot]

_____

[8] In support of this proposition, Plaintiffs cite California case law.  Plaintiffs should be aware that "federal courts sitting in diversity apply state substantive law and federal procedural rules." Gasperini v. Center for Humanities, 518 U.S. 415, 427 (1996).  In this instance, however, the state rule cited by Plaintiffs is the same under federal law.  See Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989) ("[Rule 9(b)] may be relaxed as to matters within the opposing party's knowledge.").

be expected to have personal knowledge of the relevant facts." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). That rule does not apply here, as the allegedly false representations that form the basis of the instant claim were allegedly made *to Hatfield*. Compl. ¶ 43. As such, she should be in a position to identify when and by whom the statements were made. See Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (holding that "it was not unreasonable" to expect plaintiffs who received the fraudulent telephone calls to have personal knowledge of and to allege who made the calls). In view of Plaintiffs' failure to allege fraud with specificity as required under Rule 9(b), their fifth cause of action for fraudulent inducement to accept employment is DISMISSED with leave to amend.

### E.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The elements of cause of action for intentional infliction of emotional distress ("IIED") are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) severe or extreme emotional distress suffered by the plaintiff; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009). A defendant's conduct is "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993) (internal quotations omitted).

In their cause of action for IIED, Plaintiffs simply allege that "Defendant DaVita's conduct as hereinabove alleged was outrageous." Compl. ¶ 55. Though the section of the Complaint comprising the IIED claim fails to allege what particular acts were outrageous, Plaintiffs contend that by incorporating by reference all of the previous paragraphs of the Complaint, they have satisfied their obligation of providing fair notice to Defendant of the conduct that forms the basis of their IIED claim. Opp'n at 8-9. Not so. The pleadings contain a litany of discursive allegations regarding purported wrongdoing by Defendant— and it is far from clear which of the numerous acts alleged were directed against Plaintiffs. For example, the Complaint alleges that: "Filipino employees would regularly berate

1   Caucasians, and using profanity and oftentimes addressing Caucasians in Tagalog. . . .

2   This was directed to both patients and staff."  Compl. ¶ 13B.  But Plaintiffs do not allege

3   that such conduct was directed at them, took place in their presence with knowledge of

4   Defendant, or was intended to cause them severe emotional distress.  See Christensen v.

5   Superior Court, 54 Cal.3d 868, 903 (1991) ("It is not enough that the conduct be intentional

6   and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a

7   plaintiff of whom the defendant is aware.").  The other instances of purported misconduct

8   suffer from similar deficiencies.  The Court will grant Plaintiffs leave to amend to cure

9   these deficiencies.

10          Alternatively, Defendant contends that Plaintiffs' claim for IIED is barred by the

11   exclusivity provisions of California's workers' compensation law.  See Cal. Labor Code

12   §§ 3600, 3602.  Defendant's blanket argument is not entirely accurate.  "When the

13   misconduct attributed to the employer is actions which are a normal part of the employment

14   relationship, such as demotions, promotions, criticism of work practices, and frictions in

15   negotiations as to grievances, an employee suffering emotional distress causing disability

16   may not avoid the exclusive remedy provisions of the Labor Code by characterizing the

17   employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause

18   emotional disturbance resulting in disability."  Cole v. Air Oaks Fire Prot. Dist., 43 Cal.3d

19   148, 160 (1987).

20          The California Supreme Court has recognized that there are exceptions to the

21   workers' compensation exclusivity for "conduct that 'contravenes fundamental public

22   policy'. . . [and] conduct that 'exceeds the risks inherent in the employment relationship.'"

23   Miklosy v. Regents of Univ. of Cal., 44 Cal.4th 876, 902 (2008).  For instance, acts of

24   harassment and discrimination predicated on a plaintiff's membership in a protected class

25   are deemed to exceed the risks inherent in the employment relationship and thus are **not**

26   preempted.  See City of Moorpark v. Superior Ct., 18 Cal.4th 1143, 1155 (1998).

27   However, in Miklosy the court held that a whistleblower retaliation claim falls into neither

28

of the two aforementioned exceptions to workers' compensation exclusivity, and therefore, emotional distress claims premised on such conduct are preempted.  44 Cal.4th at 903.

At this juncture, the factual basis underlying Plaintiffs' IIED claim is unclear.  The Court therefore said claim is DISMISSED with leave to amend.  In amending this claim, Plaintiffs shall remain mindful of whether their claims are subject to workers' compensation preemption, as discussed above.

**IV.    <u>CONCLUSION</u>**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.    Defendant's motion to dismiss is GRANTED.  Plaintiffs' second through sixth causes of action of the Complaint are DISMISSED with leave to amend.  Defendant's alternative motion for a more definite statement is DENIED AS MOOT.

2.    Plaintiffs shall have twenty-one (21) days from the date this Order is filed to file a First Amended Complaint, consistent with the Court's rulings.  Plaintiffs are advised that any additional factual allegations set forth in their amended complaint must be made in good faith and consistent with Federal Rule of Civil Procedure 11.  To avoid unnecessary motion practice, the parties shall meet and confer *in good faith* regarding the sufficiency of Plaintiffs' amended allegations in their forthcoming First Amended Complaint.

IT IS SO ORDERED.

Dated: May 19, 2014

SAUNDRA BROWN ARMSTRONG
United States District Judge